DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Erie County Court of Common Pleas, Juvenile Division, that awarded permanent custody of Jasmine D., born on February 28, 1998, to the Erie County Department of Human Services ("Agency"). For the reasons that follow, this court affirms the judgment of the trial court.
Appellant Diana K., natural mother of Jasmine D., sets forth the following assignment of error:
 "I. THE TRIAL COURT ERRED IN GRANTING THE ERIE COUNTY DEPARTMENT OF HUMAN SERVICES [SIC] MOTION FOR PERMANENT CUSTODY AS SAID DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
The facts that are relevant to the issues raised on appeal are as follows. On July 22, 1998, Diana K. took Jasmine D., who was then five months old, to the emergency room at Firelands Hospital, because the child had a soft bump on the left side of her head. Pursuant to a physical examination, it was determined that Jasmine D. had a superficial hematoma of the left temporal area of her skull. The examination was otherwise normal, and Diana K. took the child home. On August 3, 1998, Diana K. again took Jasmine D. to the emergency room because the bump on her head had not gone away. At that time, a CT scan of the skull was performed, which revealed a curvilinear fracture on the left side of Jasmine D.'s skull of approximately one month's duration. The hospital then contacted children's services, who interviewed Diana K. and subsequently removed Jasmine D. from the home and placed her in foster care.
That same day, the Agency filed an ex parte motion for emergency custody, which was granted.
On August 5, 1998, the Agency filed a complaint against Diana K. and Randy D., Jasmine D.'s natural father, in which it alleged that Jasmine D. exhibited evidence of "physical or mental injury * * *, inflicted other than by accidental means * * *." Specifically, the Agency alleged that Jasmine D. had a skull fracture of suspicious origin, and that the child's parents were unwilling or unable to explain how the child received the injury. That same day, following a hearing, the trial court filed a judgment entry in which it continued the grant of temporary custody to the Agency.
On August 12, 1998, Jasmine D.'s foster mother took her back to the emergency room at Firelands where she reported that Jasmine D. was "excessively cranky," did not want to be held, and was not taking in enough fluids. X-rays performed at that time revealed, in addition to the skull fracture, fractures of Jasmine D.'s right clavicle and her third left rib. The radiology report stated that these last two injuries "may possibly be secondary to non-accidental trauma."
The initial case plan, filed on September 24, 1998, stated that there was a history of domestic violence between Randy D. and Diana K., and that both parents admitted to smoking marijuana. The plan also stated that Diana K. related a history of physical and sexual abuse as a child, Randy D. related a history of physical abuse as a child, and that the couple stated their home is infested with cockroaches.
The case plan provided for Randy D. and Diana K. to complete psychological evaluations and individual and family counseling to address the issues of domestic violence, anger management, abuse of Jasmine D. and parenting skills. The case plan further provided for random drug and alcohol screens for Diana K. and Randy D., and for a drug and alcohol assessment of both parents. In addition, Diana K. and Randy D. were to maintain a clean and sanitary home or find other suitable housing. Also, pursuant to the case plan, Randy D. and Diana K. were to pay child support for Jasmine D. and to have weekly supervised visits with Jasmine D. at the Agency.
On September 30, 1998 and October 8, 1998, hearings were held, at which the Agency presented evidence of Jasmine D.'s injuries and information gathered by the Agency in interviews with Diana K. and Randy D. Specifically, as to Jasmine D.'s injuries, the Agency offered the medical report of David Gemmill, M.D., Director and Assistant Professor for the Child Abuse Neglect Prevention Program at the Medical College of Ohio. In his report, Dr. Gemmill stated that he physically examined Jasmine D. and reviewed the x-rays taken at Firelands. Based on his examination, Dr. Gemmill concluded that either the skull fracture or the clavicle fracture, by themselves, could have been accidentally inflicted. However, he stated that "the accumulation of all three fractures in a child this young is certainly stretching anybody's imagination for accidental events in the life of a baby." Dr. Gemmill ultimately concluded that it is likely that all three injuries, taken together, are "the result of abusive handling at one time or another."
On October 16, 1998, the magistrate filed a decision in which she found, based on the evidence presented, that Jasmine D. was an abused and neglected child. On December 15, 1998, the trial court adopted the magistrate's decision.
As a result of the Agency's investigation of Jasmine D.'s injuries, Randy D. was charged with three counts of felonious assault and four counts of child endangering and Diana K. was charged with one count of misdemeanor child endangering and one count of felony child endangering. Randy D. subsequently entered a plea to four counts of child endangering pursuant to R.C. 2919.22(B) in exchange for the dismissal of the remaining counts, and Diana K. pled guilty to the misdemeanor count of child endangering pursuant to R.C. 2919.22(A) in exchange for the dismissal of the felony count. On January 27, 1999, Diana K. was sentenced to serve six months in jail. On February 26, 1999, Randy D. was sentenced to serve four consecutive two-year prison terms on the four counts of child endangering.
On February 5, 1999, a semi-annual review was held, at which time the court reviewed the first amended case plan. In the amended case plan, the social worker noted that Diana K. reported being "in intensive out-patient treatment at Bayshore Counseling Services." However, the caseworker stated that Diana K. had not provided the caseworker with verification that she was attending parenting classes. The plan stated that Diana K. received a psychological evaluation on October 13, 1998, and was recommended for counseling and a drug and alcohol assessment and/or treatment. The plan further noted that Randy D. was incarcerated at the time, and that Diana K. had been released from jail and was residing at "Serenity House." Neither Diana K. nor Randy D. was employed at the time the case plan review was conducted. On February 9, 1999, the trial court awarded temporary custody of Jasmine D. to the Agency.
On July 23, 1999, a second semi-annual review was conducted. The caseworker noted in the second amended case plan that neither Randy D. nor Diana K. was paying court-ordered child support for Jasmine D., although she stated Diana K. reportedly was employed. The caseworker also stated that Randy D. was still incarcerated at the time of the review and had done nothing to comply with the case plan.
As for Diana K.'s progress after her early release from the Erie County Jail, the caseworker stated the following:
 "Diana was in treatment at the Donofrio Women's Center until she was self eliminated from the program. Once Diana was placed back at the Erie County Jail, Diana began treatment with Bayshore again. Diana completed I.O.P. on June 16, 1999. On June 18, 1999 Diana disappeared and has stated that she went on a drinking binge. Diana returned to the Serenity House on June 24, 1999. Diana is now confined to the house for 90 days. Diana is only permitted to leave the house for work, AA meetings and counseling. Diana also attends at least 5 AA/NA/CA meetings weekly and is involved with the continuing care program with Bayshore. Diana is also attending Mental Health Counseling to address her own childhood sexual abuse and male dependency."
The caseworker also noted that, while she was at the Donofrio Addiction Rehabilitation Women's Center, "Diana failed to comply with a contract that prohibited her from having contact with male residents." The caseworker concluded that the goals of the case plan had not yet been met, and that Jasmine D.'s placement in foster care was appropriate.
On September 8, 1999, the trial court filed a judgment entry in which it found that it was in Jasmine D.'s best interest to continue in the temporary custody of the Agency. On December 14, 1999, the Agency filed a "MOTION FOR PERMANENT CUSTODY" in which it stated that Jasmine D. could not be placed with either of her parents "now or within a reasonable period of time" and that returning to her parents is not in Jasmine D.'s best interest.
On January 18, 2000, a third semi-annual case plan review was performed. In the third amended case plan, the caseworker stated that Diana K. was no longer going to counseling for mental health issues and her drug treatment counselor at Bayshore had not seen Diana K. since the end of November 1999. The caseworker also reported giving Diana K. two random drug screens which had been positive for marijuana use. The caseworker noted that Diana K. reported she had recently obtained housing. The caseworker concluded that the goals of the case plan had not yet been completed, and stated that the Agency had filed for permanent custody of Jasmine D. "due to her parents' criminal charges and the length of time in care." On February 15, 2000, following a dispositional review, the trial court found that it was in Jasmine D.'s best interest that she continue in the temporary custody of the Agency.
On May 18, 2000, a hearing was held on the Agency's motion for permanent custody of Jasmine D. Present at the hearing were Diana K., represented by counsel; social workers Karen Borsum and Jennifer Rogers; Jasmine D.'s foster mother, Christina Ashakih; attorney Melvin Saferstein on behalf of Randy D.; Jasmine D.'s guardian ad litem, Patrick Quinn; Serenity House Outreach Coordinator Carol Solis, and Agency investigator Janie Jurn. Randy D., who was still incarcerated at the time of hearing, was not present.
Karen Borsum testified at the hearing that she was assigned to Jasmine D.'s case in March 1999. Borsum stated that when Jasmine D. was initially taken into custody, she had severe burns on her stomach, in addition to fractures on her skull, clavicle and rib. Borsum further stated that Jasmine D. had been in the temporary custody of the Agency for more than twelve out of the last twenty-two months and that, at the time Jasmine D. was removed from their home, Diana K. and Randy D. had a history of domestic violence, drug and alcohol abuse, and inadequate housing.
Borsum testified that although Randy D. had been sent copies of the case plans and was notified of the hearing, he had not responded to such notices or demonstrated any interest in complying with the case plans. Borsum further testified that Diana K. had not successfully completed all the requirements of the case plan. Specifically, Borsum stated that Diana K. had a psychological evaluation in October 1999, she completed parenting classes in May 1999, and began counseling at Bayshore Counseling Center for domestic violence, anger management and abuse of Jasmine D. However, Borsum did not know whether Diana K. had completed the counseling programs. Borsum stated that Diana K. had completed a continuing care program at Bayshore after her early release from jail; however, several drug screens administered by Borsum subsequent to Diana K.'s release from the program were positive for marijuana use. Borsum stated that, based on her experience working with parents who are drug and/or alcohol dependent, Diana K. exhibited signs of continuing drug abuse up to the time of the hearing.
Borsum testified that, until three months before the hearing, Diana K. had not obtained any permanent housing, despite the Agency's attempts to provide her with money for a down payment and transportation to look for housing. Borsum further testified that, due to Diana K.'s homelessness, she was unable to visit regularly with Jasmine D.; no visitation took place during the time Diana K. was in jail; and Diana K.'s visitation with Jasmine D. was, at best, "sporadic" in December 1999. Borsum stated that Diana K. had obtained part-time employment at Burger King in 1999, but was suspended from work for disciplinary reasons.
As to Jasmine D.'s placement in foster care, Borsum testified that the child is in need of a legally secure placement, permanent custody by the Agency would facilitate adoption, Jasmine D. has no significant relationship with any family members other than Diana K., she has bonded with her foster family, and she is adoptable. Borsum further testified that, in her opinion, Jasmine D. could not be placed with either of her parents either at the time of the hearing or within a reasonably foreseeable time in the future.
On cross-examination, Borsum testified that the primary reason for Jasmine D.'s removal from her parents' care was abuse; however, she stated that, at the time of the removal, the Agency also had concerns about inadequate housing and Randy D.'s and Diana K.'s drug abuse. Borsum further testified that Diana K. was never denied visitation with Jasmine D. because of drug or alcohol abuse; however, she stated that Diana K. did not always interact appropriately with Jasmine D. during visitation. Specifically, Borsum stated that Diana K. would sometimes let Jasmine D. put small objects in her mouth, and that once Diana K. feel asleep during visitation.
Jennifer Rogers testified at the hearing that she visited Diana K.'s home in May 2000. Rogers stated that the apartment consists of one large room at the top of a flight of stairs, and that the only separate room was a closet with a toilet and sink, but no bathtub or shower. Rogers stated that the room contained no bed for Jasmine D. and, on that ground alone, she would not consider it a proper home for the child. Rogers further stated that she intended to give feedback concerning the visit to Diana K. at her next scheduled visit with Jasmine D.; however, Diana K. did not show up for that visit.
Carol Solis testified that Diana K. lived at Serenity House, a transitional home and program for chemically dependent people, from the time she was released from jail until December 1999. Solis stated that Diana K. was expelled from Serenity House after admitting she had sold clean urine to other women in the program, and that Diana K. also admitted she had smoked marijuana while in the program. Solis testified on cross examination that Diana K. was in counseling while at Serenity House, and that she attended meetings and was employed most of the time she was living there.
Janie Jurn, an investigator for Erie County Child Support Enforcement Agency, testified at the hearing that Diana K. and Randy D. were each ordered to pay $50 per month in child support for Jasmine D. She stated that, at the time of the hearing, Diana K. had an arrearage of $876.77, and Randy D. had an arrearage of $1,065.09.
The testimony of Christian Ashakih was not recorded at the time of trial; however, a statement as to the content of her testimony was placed into the record by the trial court, and approved by all parties. In her testimony, Ashakih stated that Jasmine D. had been in the care of Ashakih and her husband since she was removed from Diana K.'s care in August 1998. Ashakih stated that Jasmine D. has bonded with the Ashakih family and their six month old son, Daniel. Ashakih stated that she loves Jasmine D. like her own daughter, and that she and her husband would like to adopt Jasmine D.
Ashakih testified that when she is working, she takes Jasmine D. to the day care center at the Sandusky YMCA, where she works part-time as a rental coordinator. Ashakih further testified that Jasmine D. shows no positive or negative reaction after visitation with Diana K. Ashakih stated that she had discussed Jasmine D.'s future with Diana K. in March 2000, and that Diana K. had stated she would like the Ashakihs to adopt Jasmine D.; however, Diana K. would like to continue visitations with the child.
At the conclusion of testimony, the report of Patrick Quinn, Jasmine D.'s guardian ad litem, was entered into the record. In his report, Quinn stated that, in his opinion, it is in the best interest of Jasmine D. that permanent custody be awarded to the Agency.
On July 17, 2000, the magistrate filed a decision in which she found, after reviewing the evidence set forth above, that the Agency had demonstrated by clear and convincing evidence that it is in Jasmine D.'s best interest to grant permanent custody to the Agency. The magistrate further found that Jasmine D. "cannot be placed with either of her parents within a reasonable time."
The magistrate stated that her conclusion that Jasmine D. could not be placed with Randy D. was based on the facts that Randy D. was incarcerated for a total of eight years for abusing Jasmine D., and had not completed any of the goals of the case plan as of the date of the hearing.
The magistrate further stated that Jasmine D. could not be placed with Diana K. within a reasonable period of time because Diana K. had not fully complied with the case plan. Specifically, the magistrate found that Diana K. did complete parenting classes and drug and alcohol assessment and treatment; however, Diana K. was removed from Serenity House because of her admitted drug use while in that program. The magistrate further stated Jasmine D. was "severely abused" by Randy D. and that Diana K. aided and abetted such abuse; however, there was no evidence that Diana K. completed counseling for domestic violence issues or counseling with regard to the abuse that was perpetrated on Jasmine D., even though those "particular aspects of the case plan were developed to address the problem that led to Jasmine D. be [sic] placed into the agency's custody ***." The magistrate found that, because of Diana K.'s failure to address those issues, "the likelihood that such abuse would occur again is strong" and presents a continuing threat to Jasmine D.'s safety.
The magistrate further found that Jasmine D. is not bonded to her mother; Diana K. was often inattentive to Jasmine D. during visitation; and Jasmine D. has bonded to her foster family. Finally, the magistrate found that Jasmine D. had been in the custody of the Agency
 "since August 1998 — well in excess of 12 out of the last 22 months. Further, Jasmine is in need of a legally secure placement and that cannot be achieved in this case without a grant of permanent custody [to the Agency]."
Accordingly, the magistrate recommended that permanent custody of Jasmine D. be granted to the Agency so that an adoptive placement can be made.
On July 31, 2000, Diana K. filed objections to the magistrate's decisions as being against the manifest weight of the evidence. On December 4, 2000, the trial court filed a judgment entry in which it overruled Diana K.'s objections and adopted the magistrate's decision. On February 27, 2001, Diana K. filed a timely notice of appeal.
On appeal, Diana K. argues that the trial court's decision to grant permanent custody of Jasmine D. to the Agency was against the manifest weight of the evidence because the Agency did not demonstrate by clear and convincing evidence that Jasmine D. could not be returned to her mother within a reasonable time as required by R.C. 2151.414(B)(1)(a). Specifically, Diana K. asserts that: evidence was not presented at the hearing that she did not complete the counseling required by the case plan, her home is or easily could be made adequate for Jasmine D., Diana K.'s admitted marijuana use should not have been a factor in the trial court's decision because it was not one of the reasons Jasmine D. was initially removed from the home, the trial court incorrectly concluded that Diana K. is unwilling or unable to support Jasmine D. because Diana K. attended seventy-five percent of her scheduled visitations with Jasmine D. and her minimal efforts to pay court ordered child support are not "so egregious as to demonstrate an unwillingness to provide a home for the child", and the trial court improperly considered the recommendation of the guardian ad litem that permanent custody be given to the Agency because his report was not submitted under oath.
Generally, an appellate court will not disturb a trial court's determination relative to the termination of parental rights and an award of permanent custody where such a determination is supported by clear and convincing evidence. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, paragraph three of the syllabus. Clear and convincing evidence is that proof which established in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954),161 Ohio St. 469, 477.
The version of R.C. 2151.414(B) in effect at the time the motion for permanent custody was filed provides, in pertinent part:
 "(1)[T]he court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 "(a) The child is not abandoned or orphaned or has not been in the temporary custody of a public children services agency * * * for twelve or more months of a consecutive twenty-two month period ending on or after [March 18, 1999], and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
"* * *
 "(d) The child has been in the temporary custody of one or more public children services agencies *** for twelve or more months of a consecutive twenty-two month period ending on or after [March 18, 1999]. * * *"
In this case, the trial court correctly found that Jasmine D. was in the custody of the Agency for more than twelve months out of the consecutive twenty-two month period before the May 18, 2000 hearing was held. Therefore, the applicable statute in this case is R.C.2151.414(B)(1)(d). Accordingly, although the trial court found that Jasmine D. could not be returned to Diana K. within a reasonable time as required by R.C. 2151.414(B)(1)(a), such a finding is irrelevant in this case.
The only issue remaining for this court's review is whether the trial court correctly determined that granting permanent custody to the Agency was in Jasmine D.'s best interest as required by R.C. 2151.414(B)(1). Pursuant to R.C. 2151.414(D), in determining the best interest of the child after a motion for permanent custody has been filed, the "court shall consider all relevant factors, including, but not limited to," the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies *** for twelve or more months of a consecutive twenty-two month period ending on or after [March 18, 1999];
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. * * *"
Upon consideration of the entire record of proceedings in the trial court, we conclude that there was clear and convincing evidence presented at the permanent custody hearing to support the trial court's finding that awarding permanent custody of Jasmine D. to the Agency was in the child's best interest. Randy D. was incarcerated for injuring Jasmine D. at the time the motion for permanent custody was filed by the Agency, the record shows he did nothing to comply with the case plan for reunification with his daughter, and he remained incarcerated at the time of the hearings. The record shows that the trial court heard evidence that Jasmine D. has no interaction with any of her family members except scheduled visitation with Diana K., Diana K.'s supervision of Jasmine D. during visitation was sometimes inappropriate, and Diana K. fell asleep during one visitation session. The record also contains testimony that Jasmine D. does not appear to be affected either positively or negatively by visitation with Diana K., and Jasmine D. has become integrated into Ashakih's family and that Christina Ashakih and her husband would like very much to adopt Jasmine D.
It is undisputed that Jasmine D. is too young to express her wishes as to the issue of custody. In addition, as stated above, Jasmine D. was in the custody of the Agency for more than twelve of the twenty-two months preceding the May 18, 2000 hearing. Borsum presented uncontroverted testimony that Jasmine D. was in need of legally secure placement, Jasmine D. is adoptable, and a grant of permanent custody to the Agency would facilitate an adoption. Although not mandated by statute to do so, the trial court properly considered that Diana K. pled guilty to one violation of R.C. 2919.22(A), for endangering Jasmine D. by not protecting her from the abuse perpetrated by her father, Randy D. and concluding that Diana's failure to fully comply with the case plan jeopardized Jasmine's future safety. Finally, the report of the guardianad litem, in which he expressed his recommendation that it was in Jasmine D.'s best interest to be in the permanent custody of the Agency, was properly before the court pursuant to R.C. 2151.414(C).
Accordingly, the trial court did not err by awarding permanent custody of Jasmine D. to the Agency, and appellant
Diana K.'s sole assignment of error is not well-taken. The judgment of the Erie County Court of Common Pleas, Juvenile Division, is hereby affirmed. Court costs of these proceedings are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ____________________ KNEPPER, J., Judge
 Melvin L. Resnick, J., James R. Sherck, J., CONCUR.